# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| INSURANCE MARKETING COALITION LIMITED,<br><br>　　　　　*Petitioner*,<br><br>　　v.<br><br>FEDERAL COMMUNICATIONS COMMISSION and UNITED STATES OF AMERICA,<br><br>　　　　　*Respondents*. | No. 24-10277 |

## PETITIONER INSURANCE MARKETING COALITION'S OPPOSITION TO MOTION OF NATIONAL CONSUMERS LEAGUE, ET AL. TO INTERVENE

Yaron Dori
Kevin King
　*Counsel of Record*
Matthew J. Glover
Sameer Aggarwal
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
kking@cov.com

*Counsel for Insurance Marketing Coalition, Ltd.*

February 28, 2025

Case No. 24-10277
*Insurance Marketing Coalition Ltd. v. Federal Communications Commission*

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-2(c), Counsel for Petitioner Insurance Marketing Coalition, Ltd. (IMC) hereby certifies that, to the best of Counsel's knowledge, the list of interested persons and entities in the National Consumer League's motion to intervene is complete.

Pursuant to Circuit Rule 26.1-3(b), Counsel further certifies that, to the best of Counsel's knowledge, no publicly traded company or corporation has an interest in the outcome of the case or appeal. Counsel will file an amended certificate of interested persons should they become aware of a change in interests that would affect the disclosures as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-4.

Counsel further certifies that IMC is a tax-exempt corporation incorporated in Delaware that has its principal place of business in Florida. IMC is an association that advocates on behalf of insurance industry stakeholders. IMC members interact with consumers to provide information, education, and meaningful choices related to their insurance coverage options. Counsel further certifies that IMC is not a publicly traded company or corporation, has no parent company or corporation, and no publicly held company or corporation owns 10 percent or more of IMC stock.

Case No. 24-10277
*Insurance Marketing Coalition Ltd. v. Federal Communications Commission*

                                          <u>*/s/ Kevin King*</u>
                                          Kevin King

                                          *Counsel for Petitioner*
                                          *Insurance Marketing Coalition Ltd.*

February 28, 2025

# INTRODUCTION AND SUMMARY OF ARGUMENT

The Court's work in this case should be over. Petitioner Insurance Marketing Commission (IMC) and the Federal Communications Commission have spent more than a year litigating the validity of the *Order*.[1] Those proceedings culminated in a unanimous decision by a panel of this Court holding that the Commission exceeded its statutory authority under the Telephone Consumer Protection Act (TCPA).

Now, at the thirteenth hour, after the case has been briefed, argued, and decided, a group of proposed intervenors led by the National Consumers League (NCL) has moved to intervene for the purpose of seeking further review of the Court's decision.[2] That maneuver fails several times over.

Chief among the defects is that NCL's motion is untimely under Federal Rule of Appellate Procedure 15(d), which mandates that motions to intervene in cases challenging agency orders "must be filed within 30 days" of the petition for review. NCL had a statutory right to intervene under the Hobbs Act, 28 U.S.C. § 2348, and thus (contrary to its assertion) could have moved to intervene during the period prescribed by Rule 15(d). Its failure to do so should be dispositive.

---

[1] Second Report and Order, *In re Targeting and Eliminating Unlawful Text Messages, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*, FCC CG Dkt. Nos. 21-402, 02-178, 17-59 (released Dec. 18, 2023).

[2] The Proposed Intervenors include NCL and four small business owners: Mark Schwanbeck, Micah Mobley, Christopher K. McNally, and Chuck Osborne. IMC refers to the Proposed Intervenors collectively, as NCL.

NCL's motion is also improper for several other reasons.  NCL already had a full opportunity to (and did) present its views in an amicus curiae brief, so intervention is not necessary to make those views available to the Court.  Further, by seeking to step in for the Government to pursue further review, NCL effectively asks this Court to create a new precedent that would allow private parties to usurp the Government's discretion to determine whether to seek further review of adverse decisions.  Finally, NCL still can advocate for its interests during proceedings before the Commission on remand.

For all these reasons, the Court should deny NCL's motion to intervene.

## ARGUMENT

### I. NCL'S MOTION IS UNTIMELY.

NCL's motion should be denied for the straightforward reason that it is out of time.  Rule 15(d) governs intervention in cases involving direct review of agency action, and it is unambiguous.  In such cases, a motion to intervene "*must be filed within 30 days after the petition for review is filed.*" Fed. R. App. P. 15(d) (emphasis added); *see also* Circuit Rule 15-4 (motion to intervene in direct agency review cases "may be filed within 30 days of the date on which the petition for review is filed").  NCL's motion is not timely under these rules.  IMC's petition for review was filed on January 26, 2024.  NCL's motion to intervene was filed more than one year later on February 19, 2025—nearly one month after this Court issued its opinion.

The text of Rule 15(d) is sufficient to deny NCL's motion. NCL does not point to any rule or statute that supersedes Rule 15(d) and would otherwise control the timing of its motion. Although NCL asserts (at 19) that the motion is consistent with "the spirit" of the 30-day requirement because NCL could "[o]nly now" "meet the standard for intervention by right," there is nothing about "the spirit" of Rule 15(d) that can overcome its plain text. The Rule says that a motion to intervene *must be filed* within 30 days of the petition for review.[3]

NCL is also incorrect to suggest that it could not have intervened within the initial 30-day window simply because the Commission was "vigorously defending" the *Order*. Mot. 19. The Hobbs Act—the statute governing IMC's challenge to the *Order*—expressly provided NCL the right to intervene in this case a year ago. It specifies that "any party in interest in the proceeding before the agency whose interests will be affected" by judicial review of an agency order "may appear as parties thereto of their own motion and as of right." 28 U.S.C. § 2348. And the statute further provides that "[c]ommunities, associations, corporations, firms, and individuals, whose interests are affected by the order of the agency, may intervene in any proceeding to review the order." *Id.* NCL participated in the FCC

---

[3] NCL's motion does not invoke this Court's ability to extend the 30-day deadline for "good cause," Fed. R. App. P. 26(b), and any such argument is therefore forfeited. *See Anthony v. Georgia*, 69 F.4th 796, 807 (11th Cir. 2023) (Branch, J.) ("Issues not raised in an initial brief are deemed forfeited and will not be addressed absent extraordinary circumstances.").

3

proceedings regarding the *Order* and therefore falls within these categories—meaning that NCL could have timely intervened under Rule 15(d).

Organizations with an interest in Hobbs Act litigations frequently exercise their statutory intervention rights, even when they are generally aligned with an agency's position. *See, e.g.*, *Husky Marketing & Supply Co. v. FERC*, 105 F.4th 418 (D.C. Cir. 2024) (intervenor supporting agency in Hobbs Act case); *Consumers' Research v. FCC*, 88 F.4th 917 (11th Cir. 2023) (same).[4] There is no reason NCL could not have followed that well-trodden path here.

To argue that its motion is timely, NCL points to cases discussing Federal Rule of Civil Procedure 24 and the standards governing intervention in district court. Mot. 17–18. For instance, NCL argues (at 15) that timely intervention was not possible because the FCC adequately represented NCL's interests at earlier stages of the litigation. But adequacy of representation is not a relevant factor under Rule 15(d) or the Hobbs Act. Regardless, even if Federal Rule of Civil Procedure 24's adequacy criterion applied here, it would not aid NCL. Private parties aligned with government agencies are frequently permitted to intervene in support of those agencies because courts "look skeptically on government entities serving as

---

[4] *See also Prometheus Radio Project v. FCC*, 846 F. App'x 88 (3d Cir. 2021) (same); *Free Press v. FCC*, 735 F. App'x 731 (D.C. Cir. 2018) (same); *Riffin v. STB*, 592 F.3d 195 (D.C. Cir. 2010) (same); *National Ass'n of State Utility Consumer Advocates v. FCC*, 457 F.3d 1238 (11th Cir. 2006) (same).

adequate advocates for private parties." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022) ("Where the absentee's interest is similar to, but not identical with, that of one of the parties, that normally is not enough to trigger a presumption of adequate representation." (citation omitted)); *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (permitting union to intervene alongside Department of Labor since "the burden of making th[e] showing" of inadequate representation "should be treated as minimal"). *Husky* and the other cases cited on the preceding page—all of which involved intervention by parties aligned with a federal agency—further underscore the flaw in NCL's argument.

NCL also contends that its motion is timely under *Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267 (2022), because "[t]imeliness under Rule 24 'is to be determined from all the circumstances, and the point to which a suit has progressed is not solely dispositive.'" Mot. 18 (quoting *Cameron*, 595 U.S. at 279). But NCL ignores *Cameron*'s acknowledgment that Civil Rule 24 does not control in cases (like this one) involving direct review of agency orders. The Supreme Court explained that, while the Federal Rules of Appellate Procedure do not say much about intervention, they "make only one passing reference to intervention, and that reference concerns the review of *agency* action." *Cameron*, 595 U.S. at 276 (citing Fed. R. App. P. 15(d)). Because Rule 15(d) did not govern in *Cameron*, the Court

5

was forced to "look[] elsewhere for guidance" (to Civil Rule 24). *Id.* at 277. But Rule 15(d) and the Hobbs Act are directly on point here, and thus dictate that NCL's motion is untimely.

NCL's motion is not only a year late—it postdates the Court's opinion deciding this case. The D.C. Circuit has explained that when a "motion for leave to intervene comes *after* the court of appeals has decided a case, it is clear that intervention should be even more disfavored." *Amalgamated Transit Union Int'l, AFL-CIO v. Donovan*, 771 F.2d 1551, 1553 (D.C. Cir. 1985). Intervention at this late stage would be "unduly disruptive and [would] plac[e] an unfair burden on the parties to the appeal," because the parties' interests "have been fixed and fully addressed by the … appellate cour[t]," and it "would be entirely unfair, and an inexcusable waste of judicial resources, to allow a potential intervenor to lay in wait until the parties and the … appellate cour[t] have incurred the full burden of litigation before deciding whether to participate in the judicial proceedings." *Id.* This Court should therefore deny NCL's last-ditch motion.

## II. NCL WAS ALREADY HEARD IN THIS CASE.

This Court should also deny the motion because NCL already had a full opportunity to participate in this litigation and provide the Court with its views. The Consumer Federation of America (CFA)—of which NCL is a member—signed an amicus brief in support of the *Order* that was filed with the Court. *See* Br. of

6

National Consumer Law Center, et al.[5] That brief was led by the National Consumer Law Center, which also now appears as counsel on NCL's motion. When deciding this case, the Court had access to the amicus brief and was able to consider it when crafting its opinion. The Court will not benefit by allowing NCL to intervene at this late stage to provide the Court with information that it either already had access to or could have had access to if NCL had provided it in a timely manner. *See Amalgamated Transit*, 771 F.2d at 1553 ("[I]f intervention is allowed after appellate argument and decision, both the judicial panel and the parties before the court are denied any meaningful opportunity to respond to any new arguments raised by a claimant who seeks to intervene.").

To the extent that NCL seeks to provide new information through its five declarations, that effort should be rejected. NCL had ample opportunity to provide that information earlier in this litigation, either by filing an amicus brief or by intervening under the Hobbs Act within Rule 15(d)'s 30-day window.

### III. NCL SHOULD NOT BE PERMITTED TO STAND IN THE GOVERNMENT'S SHOES.

NCL's motion also improperly seeks to usurp the Government's authority to make litigation decisions about agency regulations. The Commission undertook a

---

[5] National Consumers League is listed as a member of the CFA on the CFA's website. *See National Members*, Consumer Federation of America, https://consumerfed.org/national-members/ [https://perma.cc/U3P8-43S6].

full rulemaking proceeding before it issued the *Order* and once IMC petitioned for review of the *Order*, the Commission "vigorously defend[ed]" the *Order*'s validity (Mot. 19). As a result, at every step of this litigation, this Court has had the benefit of fully adversarial arguments about the *Order*'s legal status. Against that backdrop, the Court ultimately agreed with IMC that the *Order*'s restrictions on consumers' consent exceeded the Commission's statutory authority.

For all subsequent litigation determinations, such as whether to seek rehearing in this Court or a writ of certiorari in the Supreme Court, it is the Government's responsibility to determine whether it is in the public interest—and the agency's interest—to continue the litigation. *See* 28 U.S.C. §§ 516–517 ("[T]he conduct of litigation in which the United States, an agency, or officer thereof is a party … is reserved to officers of the Department of Justice, under the direction of the Attorney General."). And the Government is fully capable of carrying out that task. *Cf. PETA v. U.S. Department of Agriculture*, 918 F.3d 151, 157 (D.C. Cir. 2019) (citing the "presumption of regularity" under which "courts presume that [public officials] have properly discharged their official duties").

Permitting NCL to intervene here would open the floodgates to allowing parties to intervene to extend litigation any time they disagree with the Government's exercise of its discretion to not seek further judicial review of an adverse decision. There are myriad cases in which the Government can appeal but

the Solicitor General decides to not pursue an appeal for any number of reasons. *See* U.S. Dep't of Justice Manual §§ 2-2.121 ("All appeals … and all petitions for certiorari … must be authorized by the Solicitor General."). Those decisions are the Government's—and the Government's alone—to make. *See id.* Allowing NCL to intervene here would set a precedent that any interested party may intervene after judgment to seek en banc review or certiorari in any case in which its preferred side does not prevail. This would convert all amici into intervenors the moment a losing party decides not to seek further review.

Worse still, NCL's attempt to usurp the Government's motion is built on a speculative foundation. The entire basis of NCL's motion is a prediction that the Commission will not seek further review of this Court's decision. But as NCL acknowledges (at 16), the Commission has not publicly stated any position on whether it will continue to defend the *Order*. Although NCL believes it is "evident" that the Commission will not do so (Mot. 11), NCL has no concrete basis to support its speculation about the Commission's future action. And even if the Commission chooses not to seek further review, NCL has no basis to attribute that decision to the change in administration rather than other factors, including that the Commission believes that further review is futile in light of this Court's unanimous opinion. The Court should not grant a motion to intervene that is based on mere guesswork.

## IV. NCL CAN STILL ADVOCATE BEFORE THE COMMISSION.

This Court should also deny the motion because NCL has other means to advocate for its interests. This Court's opinion deciding this case vacated Part III.D of the *Order* and remanded the case to the Commission for further proceedings. NCL—which describes itself as a "leader in the advocacy efforts before the [Commission] to provide improved protections for consumers flooded by unwanted telemarketing robocalls and scam calls," Greenberg Decl. ¶ 3—can therefore continue any advocacy efforts to advance its interests in the proceedings on remand. Further, as IMC has explained, the Commission retains tools to reduce the number of truly unwanted calls while preserving consumers' rights to receive calls that they have affirmatively requested. *See* IMC Br. 55 & n.18.

## CONCLUSION

The Court should deny NCL's motion to intervene.

Respectfully Submitted,

*/s/ Kevin King*
Yaron Dori
Kevin King
  *Counsel of Record*
Matthew J. Glover
Sameer Aggarwal
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001
(202) 662-5488
kking@cov.com

*Counsel for Petitioner*
*Insurance Marketing Coalition Ltd.*

February 28, 2025

11

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| INSURANCE MARKETING COALITION LIMITED, ) ) ) ) *Petitioner*, ) ) v. ) ) FEDERAL COMMUNICATIONS ) COMMISSION and UNITED STATES ) OF AMERICA, ) ) *Respondents*. ) ) | No. 24-10277 |

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 25(d) of the Federal Rules of Appellate Procedure, I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), the motion contains 2,441 words. I further certify that the motion complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in 14-point Times New Roman font.

/s/ Kevin King
Kevin King

*Counsel for Petitioner*
*Insurance Marketing Coalition Ltd.*

February 28, 2025