No. 24-10277

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

INSURANCE MARKETING COALITION LTD.
*Petitioner*,

v.

FEDERAL COMMUNICATIONS COMMISSION and
UNITED STATES OF AMERICA,
*Respondents*.

On Petition for Review of an Order of
the Federal Communications Commission

## PROPOSED INTERVENORS' PROPOSED
## PETITION FOR REHEARING EN BANC

Jennifer S. Wagner
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th Floor
Boston, MA 02110
(617) 542-8010
jwagner@nclc.org

*Counsel for National Consumers
League*

Leah M. Nicholls
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
LNicholls@publicjustice.net

*Counsel for Proposed
Intervenors*

***Insurance Marketing Coalition Ltd. v. FCC***, **Case No. 24-10277**

## CERTIFICATE OF INTERESTED PERSONS

Under Eleventh Circuit Rules 26.1-1, 26.1-2(c), and 40-3(b), undersigned counsel for Intervenors certifies that the following is a full and complete list of all persons, firms, associations, partnerships, and corporations, including subsidiaries, conglomerates, affiliates, parent corporations, and other legal entities having an interest in the outcome of this case:

1. Aggarwal, Sameer, Covington & Burling LLP, counsel for Petitioner;

2. Boeglin, John A., Covington & Burling LLP, former counsel for Petitioner;

3. Carter, Carolyn, National Consumer Law Center, counsel for *Amicus Curiae* National Consumer Law Center;

4. Citrin, Sarah E., Federal Communications Commission, counsel for Respondent;

5. Covington & Burling LLP, counsel for Petitioner;

6. Dori, Yaron, Covington & Burling LLP, counsel for Petitioner;

7. Dunne, Matthew J., Federal Communications Commission, counsel for Respondent;

8. Electronic Privacy Information Center, *Amicus Curiae*;

9. Ellison, P. Michele, Federal Communications Commission, counsel for Respondent;

10. Federal Communications Commission, Respondent;

11. Garcia, Nicholas, Public Knowledge, counsel for *Amicus Curiae* Public Knowledge;

12. Glover, Matthew J., Covington & Burling LLP, counsel for Petitioner;

13. Greenburg, Sally, Intervenor National Consumers League;

14. Insurance Marketing Coalition Limited, Petitioner;

15. Iorio, Megan, Electronic Privacy Information Center, counsel for *Amici Curiae*;

16. King, Kevin F., Covington & Burling LLP, counsel for Petitioner;

17. Lewis, Jacob Matthew, Federal Communications Commission, counsel for Respondent;

18. McNally, Christopher K., Intervenor;

19. Mobley, Micah, Intervenor;

20. Murray, Teresa, *Amicus Curiae* U.S. PIRG;

21. National Consumer Law Center, *Amicus Curiae* and counsel for Intervenor National Consumers League;

22. National Consumers League, Intervenor;

23. Nicholls, Leah M., Public Justice, counsel for Intervenors;

24. Nicholson, Robert B., U.S. Department of Justice, counsel for Respondent;

25. Osborne, Chuck, Intervenor;

26. Public Justice, counsel for Intervenors;

27. Public Knowledge, *Amicus Curiae*;

28. Saunders, Margot, National Consumer Law Center, counsel for *Amicus Curiae* National Consumer Law Center;

29. Schwanbeck, Mark, Intervenor;

30. United States of America, Respondent;

31. U.S. PIRG, *Amicus Curiae*;

32. Wagner, Jennifer S., National Consumer Law Center, counsel for Intervenor National Consumers League;

33. Wiggers, Robert J., U.S. Department of Justice, counsel for Respondent;

34. Witte, Erin, Consumer Federation of America, counsel for *Amicus Curiae* Consumer Federation of America.

***Insurance Marketing Coalition Ltd. v. FCC*, Case No. 24-10277**

In accordance with Rule 26.1(a) of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1-3(b), the undersigned further certifies that there is no publicly traded company or corporation with an interest in the outcome of this case.

March 10, 2025

*/s/ Leah M. Nicholls*
Leah M. Nicholls

*Counsel for Proposed Intervenors*

# 11TH CIRCUIT RULE 40-3(c) STATEMENT

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decision of the Supreme Court of the United States and the precedents of this circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court:

1. *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369 (2024);

2. *Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278 (11th Cir. 2025);

3. *Perez v. Owl, Inc.*, 110 F.4th 1296 (11th Cir. 2024); and

4. *Turner v. U.S. Attorney General*, 127 F.4th 878 (11th Cir. 2025).

The panel decision also conflicts with post-*Loper* decisions from other circuits:

1. *Lissack v. Commissioner of Internal Revenue*, 125 F.4th 245 (D.C. Cir. 2025);

2. *Lopez v. Garland*, 116 F.4th 1032 (9th Cir. 2024); and

3. *Dayton Power & Light Co. v. Federal Energy Regulatory Commission*, 126 F.4th 1107 (6th Cir. 2025).

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves questions of exceptional importance:

1. Whether, post-*Loper*, a court evaluating whether an agency exceeded its statutory authority in promulgating a rule can entirely ignore *Skidmore* deference

where the agency's interpretation of the statute is supported by thorough reasoning, well-supported factual findings, and agency expertise.

2.    Whether a court evaluating if the Federal Communications Commission (FCC) exceeded its statutory authority in promulgating a rule can disregard the Telephone Consumer Protection Act's broad mandate authorizing and requiring the FCC to implement the statute's protection of telephone subscribers from unwanted robocalls.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

11TH CIRCUIT RULE 40-3(c) STATEMENT ........................................................ i

TABLE OF AUTHORITIES .................................................................................... iv

STATEMENT OF THE ISSUES MERITING EN BANC CONSIDERATION......1

COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE ...................2

STATEMENT OF FACTS .......................................................................................3

ARGUMENT ...........................................................................................................4

I.      The Panel Decision Conflicts with *Loper* and Post-*Loper* Decisions
        Embracing *Skidmore* Deference. ....................................................................4

II.     The Panel's Cursory Rejection of the FCC's Authority to Define "Prior
        Express Consent" in the Rule Is Inconsistent with the Thorough Analysis
        Required by *Loper*. .........................................................................................9

III.    The FCC Has Authority to Promulgate the Rule, and Its Interpretation of the
        TCPA Is Entitled to *Skidmore* Deference. ....................................................11

IV.     The Eleventh Circuit Cases Relied on by the Panel Do Not Support Its
        Holding..............................................................................................................16

CONCLUSION ......................................................................................................18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Bais Yaakov of Spring Valley v. FCC*,
  852 F.3d 1078 (D.C. Cir. 2017)........................................................10

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
  591 U.S. 610 (2020).......................................................................11

*Dayton Power & Light Co. v. Fed. Energy Regulatory Comm'n*,
  126 F.4th 1107 (6th Cir. 2025) .....................................................i, 8

*Glover v. Ocwen Loan Serv., LLC*,
  127 F.4th 1278 (11th Cir. 2025) ...................................................i, 6

*Gorss Motels, Inc. v. Safemark Sys., LP*,
  931 F.3d 1094 (11th Cir. 2019) .......................................................17

*Lissack v. Comm'r of Internal Revenue*,
  125 F.4th 245 (D.C. Cir. 2025).............................................. i, 7-8, 16

\*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024)............................................................... i, 5-9

*Lopez v. Garland*,
  116 F.4th 1032 (9th Cir. 2024) .....................................................i, 8

*Lucoff v. Navient Sols., LLC*,
  981 F.3d 1299 (11th Cir. 2020) .......................................................17

*Mais v. Gulf Coast Collection Bureau, Inc.*,
  768 F.3d 1110 (11th Cir. 2014) .......................................................18

*Mayfield v. U.S. Dep't of Labor*,
  117 F.4th 611 (5th Cir. 2024) ................................................. 9-11, 13

*Osorio v. State Farm Bank, F.S.B.*,
  746 F.3d 1242 (11th Cir. 2014) ................................................. 17-18

*Perez v. Owl, Inc.*,
  110 F.4th 1296 (11th Cir. 2024) .....................................................i, 6

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944)..............................................................................5, 7

*Turner v. U.S. Attorney General*,
   127 F.4th 878 (11th Cir. 2025) ....................................................... i, 6-7

## STATUTES

47 U.S.C. § 227 ................................................................................12

47 U.S.C. § 227(b)(1)(A).............................................................3, 12

47 U.S.C. § 227(b)(1)(B).............................................................3, 12

47 U.S.C. § 227(b)(2)..............................................................3, 10, 12

47 U.S.C. § 227(c)(1).........................................................................3

Pub. L. 102–243, 105 Stat. 2394 (1991)..........................................12

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(a)(2)..................................................................3

47 C.F.R. § 64.1200(f)(9) .........................................................3, 13, 16

https://docs.fcc.gov/public/attachments/DOC-408396A1.pdf...................3

https://www.prnewswire.com/news-releases/us-consumers-received-
   nearly-4-4-billion-robocalls-in-december-52-8-billion-in-all-of-
   2024--according-to-youmail-robocall-index-302348867.html .........................11

*In the Matter of Targeting and Eliminating Unlawful Text Messages,
   Rules and Regulations Implementing the Tel. Consumer Prot. Act
   of 1991, Advanced Methods to Target and Eliminate Unlawful
   Robocalls, Second Report and Order*, CG Docket Nos. 21-402, 02-
   278, 17-59, 38 FCC Rcd. 12247 (Dec. 18, 2023),
   https://docs.fcc.gov/public/attachments/FCC-23-107A1.pdf...............3-4, 14-17

*In the Matter of Advanced Methods to Target and Eliminate Unlawful
   Robocalls, Second Report and Order*, CG Docket No. 17-59 (Dec.
   13, 2018), https://docs.fcc.gov/public/attachments/fcc-18-
   177a1.pdf ....................................................................................... 11-12

**STATEMENT OF THE ISSUES MERITING EN BANC CONSIDERATION**

1.      Whether, post-*Loper*, a court evaluating whether an agency exceeded its statutory authority in promulgating a rule can entirely ignore *Skidmore* deference where the agency's interpretation of the statute is supported by thorough reasoning, well-supported factual findings, and agency expertise.

2.      Whether a court evaluating if the Federal Communications Commission (FCC) exceeded its statutory authority in promulgating a rule can disregard the Telephone Consumer Protection Act's (TCPA's) broad mandate authorizing and requiring the FCC to implement the statute's protection of telephone subscribers from unwanted robocalls.

3.      Whether the FCC exceeded its statutory authority under the TCPA by requiring consent to receive telemarketing robocalls be made on an entity-by-entity basis.

## COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

Insurance Marketing Coalition Ltd. (IMC), an insurance industry marketing consortium, petitioned this Court challenging the Federal Communications Commission's (FCC's) One-to-One Consent Rule, which requires that telephone subscriber consent to robocalled be granted one entity at a time. Op. 3-4.[1] It contended that, in promulgating the Rule, the FCC exceeded its statutory authority, the Rule violates the First Amendment, and the Rule is arbitrary and capricious. The panel's January 24, 2025, decision vacated the Rule on the basis that the FCC exceeded its authority under the Telephone Consumer Protection Act (TCPA) and did not reach IMC's other arguments.

The panel reasoned that the Rule's "consent restrictions impermissibly conflict with the ordinary statutory meaning of 'prior express consent.'" Op. 4. In doing so, the panel expressly limited its analysis to the text of the statute, declining, without discussion, to consider affording any deference to the FCC and disregarding the TCPA's explicit instruction that the FCC implement the statute through regulations, the congressional intent behind the statute, and the FCC's expert analysis and factfinding in promulgating the rule. Op. 15.

---

[1] IMC also challenged the FCC's requirement that the subject matter of a call be "logically and topically associated with the interaction that prompted the consent." *See* Op. 3-4. Proposed Intervenors seek rehearing only with regard to the One-to-One Consent Rule.

Because the Government is unlikely to seek additional review of the panel's decision, the Proposed Intervenors moved to intervene to do so on February 19, 2025. ECF 63. IMC opposed the motion, ECF 66, which is now fully briefed and pending before this Court. Proposed Intervenors now seek rehearing en banc.

## STATEMENT OF FACTS

Congress enacted the TCPA to protect American telephone subscribers from the scourge of unwanted robocalls. The statute prohibits robocalls without the "prior express consent" of the called party and gives a broad mandate to the FCC to adopt regulations to implement that prohibition. 47 U.S.C. § 227(b)(1)(A), (b)(1)(B), (b)(2), (c)(1). Pursuant to that authority, in December 2023, the FCC updated its regulations, requiring that "prior express consent" to be called be provided to one entity at a time.[2] This rule, known as the One-to-One Consent Rule, was necessary "to combat unwanted and illegal telemarketing calls" by prohibiting treating a subscriber's single click on a website as consent to receive telemarketing robocalls from dozens (or hundreds or thousands) of sellers.[3] The Rule also prohibits the sale and resale of consent, which the FCC found is a substantial driver of unwanted robocalls. *In the Matter of Targeting and Eliminating Unlawful Text Messages,*

---

[2] The regulation—47 C.F.R. § 64.1200(f)(9)—governs telemarketing calls made with "an automated telephone dialing system or an artificial or prerecorded voice," 47 C.F.R. § 64.1200(a)(2), or "robocalls."

[3] https://docs.fcc.gov/public/attachments/DOC-408396A1.pdf.

3

*Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*, Second Report and Order ¶ 31, CG Docket Nos. 21-402, 02-278, 17-59, 38 FCC Rcd. 12247 (Dec. 18, 2023) (Order).[4]

## ARGUMENT

### I.    The Panel Decision Conflicts with *Loper* and Post-*Loper* Decisions Embracing *Skidmore* Deference.

In determining that the FCC exceeded its authority in issuing the Rule, the panel exclusively focused on whether the Rule parrots the ordinary meaning of "prior express consent" in the TCPA. That narrow focus conflicts with the approach outlined by the Supreme Court in *Loper* and with this and other courts' post-*Loper* decisions. While *Loper* overturned the requirement that courts must defer to agencies' interpretations of ambiguous statutes, the Supreme Court did not—as the panel did here—hold that a court's analysis is limited to interpreting the statutory text in isolation. Rather, *Loper* endorsed *Skidmore* deference, under which a court considers an expert agency's view of the statute, particularly when the agency analysis is thorough.

*Loper* explained that, when interpreting a statute to determine whether an agency exceeded its authority, a court may "seek aid from the interpretations of those

---

[4] https://docs.fcc.gov/public/attachments/FCC-23-107A1.pdf.

responsible for implementing particular statutes"—the agencies themselves. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). "Such interpretations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the [Administrative Procedures Act (APA)]." *Id.* (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). While "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, . . . [c]areful attention to the judgment of the Executive Branch may help inform that inquiry." *Id.* at 412-13. "'The weight of such a judgment in a particular case' . . . would 'depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade[.]'" *Id.* at 388 (quoting *Skidmore*, 323 U.S. at 140). In short, the Supreme Court viewed the expert agency's interpretation of the statute to be a useful tool in determining its meaning, endorsing the continued application of *Skidmore* deference. *See id.* at 476 (Kagan, J., dissenting) ("[T]he majority makes clear that what is usually called *Skidmore* deference continues to apply.").

In contrast, the panel limited its analysis to the ordinary meaning of "prior express consent," on the ground that "[s]tatutory interpretation begins and ends with the text." Op. 15. While the panel acknowledged *Loper*, Op. 11, it did not consider "the experience and informed judgment" of the FCC and ignored the agency's

extensive fact-finding and thorough analysis demonstrating the Rule's consistency with congressional intent. *Loper*, 603 U.S. at 394. Rather, it dismissed consideration of the necessity for the Rule to implement the TCPA as a policy argument unrelated to its interpretation of the statute. Op. 20.

The conflict between *Loper*'s endorsement of *Skidmore* deference and the panel's text-only review warrants rehearing.

### A. The panel decision conflicts with Eleventh Circuit post-*Loper* decisions applying *Skidmore* deference.

Unlike the panel here, other post-*Loper* decisions from this Circuit follow the Supreme Court's endorsement of *Skidmore* deference.

*Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278, 1288 n.9 (11th Cir. 2025), reads *Loper* to embrace *Skidmore* deference, explaining that "the interpretations of the relevant agency, made in pursuance of official duty, and based on specialized experience, 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Id.* (quoting *Loper*, 603 U.S. at 394). Applying *Skidmore* deference, *Glover* considered—and agreed with—an agency's position on a statute's meaning. *Id.* at 1288-89. *Perez v. Owl, Inc.*, 110 F.4th 1296, 1307-08 (11th Cir. 2024), likewise expressly applied *Skidmore* deference to an agency position on the meaning of an undefined term in the statute.

And *Turner v. U.S. Attorney General*, 127 F.4th 878, 889 (11th Cir. 2025), similarly explains that *Skidmore* deference is warranted "where an agency's

'specialized experience' and 'informed judgment' work to lend persuasive power to its interpretations," *id.* (quoting *Skidmore*, 323 U.S. at 139-40), although it ultimately found *Skidmore* deference inapplicable because the agency had not addressed the issue at hand, *id.* at 890.

By contrast, the panel here made no attempt to determine whether the FCC's informed judgment and specialized experience were relevant to interpreting the TCPA. Op. 15. This conflict with other Eleventh Circuit decisions warrants rehearing to ensure consistency of precedent.

>    **B.    The panel decision conflicts with other circuits' post-*Loper* embrace of *Skidmore* deference.**

Other circuits—again, unlike the panel here—have interpreted *Loper* to mean a court should consider an agency's well-reasoned views. The D.C. Circuit expressly followed *Loper*'s embrace of *Skidmore* deference: "As the Court reiterated in *Loper Bright*, 'courts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes.'" *Lissack v. Comm'r of Internal Revenue*, 125 F.4th 245, 259 (D.C. Cir. 2025) (quoting *Loper*, 603 U.S. at 394). The court did exactly that, explaining that it was "look[ing] to the [agency]'s statutory analysis for its persuasive value" because agency interpretations "'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Id.* (quoting *Skidmore*, 323 U.S. at 140). *Lissack* upheld the rule at issue, finding that it "logic[ally] accord[ed] with the

statute" and was consistent with its purpose. *Id.* at 259-60. The court found the agency's analysis persuasive, noting that it had "considered and rejected" other options. *Id.* at 260.

Similarly, in *Lopez v. Garland*, 116 F.4th 1032, 1039 (9th Cir. 2024), the Ninth Circuit explained, "[After *Loper*], our task is to evaluate the statute independently under *Skidmore*, giving 'due respect,' but not binding deference to the agency's interpretation." *Id. Lopez* concluded that the agency's interpretation of certain statutory standards was entitled to *Skidmore* deference because it was "thorough and well-reasoned," even though the interpretation revised the agency's longstanding position. *Id.* at 1040.

The Sixth Circuit, in *Dayton Power & Light Co. v. Federal Energy Regulatory Commission*, 126 F.4th 1107, 1123 (6th Cir. 2025), likewise cited *Loper* when it upheld a regulation, explaining, "we may still 'seek aid' from the agency and resort to its 'experience and informed judgment' for guidance." *Id.* (citation omitted). In doing so, *Dayton Power & Light* evaluated the regulation at issue in the context of the statute, finding that it "gives full effect to both the letter and context of the law." *Id*. at 1126.

The panel's break with other circuits' application of *Skidmore* deference deepens the need for rehearing.

## II. The Panel's Cursory Rejection of the FCC's Authority to Define "Prior Express Consent" in the Rule Is Inconsistent with the Thorough Analysis Required by *Loper*.

*Loper* and other appellate cases have held that, in determining whether an agency exceeded its authority, a court must carefully examine the statute's grant of authority and evaluate how the agency's actions relate to carrying out its statutory mandate. Because the panel failed to do so, rehearing is warranted for that reason, too.

*Loper* emphasized that the scope of the agency's authority is governed by the statute, explaining that "the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits. The court fulfills that role by recognizing constitutional delegations, fixing the boundaries of the delegated authority, and ensuring the agency has engaged in reasoned decisionmaking within those boundaries." *Loper*, 603 at 395 (cleaned up). *See also id.* at 394-95 (explaining that an agency may be authorized to "exercise a degree of discretion," "prescribe rules to 'fill up the details' of a statutory scheme," or regulate with flexibility).

Applying these principles post-*Loper*, the Fifth Circuit carefully examined the scope of a statute's delegation of authority and then looked to whether the agency's exercise of that authority aligned with the text and structure of the statute. *Mayfield v. U.S. Dep't of Labor*, 117 F.4th 611, 617-19 (5th Cir. 2024). The agency did not

exceed its authority, the court concluded, because the statute gave the agency the authority to define a statutory exemption. *Id.* And though the agency added a characteristic to the exemption not included in the statutory language, because there was a link between the characteristic and the purpose of the statute, the agency acted within its authority. *Id.* at 618-19.

The panel engaged in none of that analysis. In a cursory two-paragraph discussion, the panel acknowledged the TCPA "gives the FCC the power to 'prescribe regulations to implement' the TCPA's prohibition on unconsented-to robocalls," including to fill gaps in the statute. Op. 14 (quoting 47 U.S.C. § 227(b)(2)). That authority empowers the FCC to "'reasonably define' the TCPA's consent provisions." Op. 14-15 (quoting *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1082 & n.1 (D.C. Cir. 2017) (Kavanaugh, J.)). But instead of examining whether the FCC's definition was consistent with its mandate to implement the purpose of the TCPA's prior express consent requirement, the panel held that the FCC was limited to issuing regulations parroting the "plain and ordinary meaning" of "prior express consent," read in isolation. Op. 15. For the reasons discussed below, *see* Part III, under an appropriately thorough examination, it is evident the Rule is well within the TCPA's mandate to the FCC.

Neither the Supreme Court nor other courts share the panel's cramped view of an agency's authority to define a statute's terms—as limited to their ordinary

meaning—so long as the agency's definition is sufficiently reflective of the text, structure, and purpose of the statute. *See Mayfield*, 117 F.4th at 619, 621.

### III. The FCC Has Authority to Promulgate the Rule, and Its Interpretation of the TCPA Is Entitled to *Skidmore* Deference.

Under the *Loper* framework, the TCPA grants the FCC authority to define "prior express consent" to require consent be given entity-by-entity, and the agency's expertise, informed judgment, and thorough analysis warrant *Skidmore* deference.

"Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 613 (2020). Unwanted robocalls invade the privacy of Americans, diminish the usefulness of telephones, and threaten public safety. For the four Proposed Intervenors who run small businesses, prerecorded telemarketing calls swamp their business cell phone lines, interfere with their businesses, and cause them to incur costs. ECF 63, at 4-6. The 19.3 billion telemarketing calls made annually to U.S. lines clog up the network,[5] "reducing the value of telephony to anyone who makes or receives calls." *In the Matter of Advanced Methods to Target and Eliminate Unlawful Robocalls, Second Report and Order* ¶ 4, CG Docket No.

---

[5] https://www.prnewswire.com/news-releases/us-consumers-received-nearly-4-4-billion-robocalls-in-december-52-8-billion-in-all-of-2024--according-to-youmail-robocall-index-302348867.html.

17-59 (Dec. 13, 2018).[6] In enacting the TCPA, Congress sought to protect consumers, businesses, and telecommunications systems from these unwanted, intrusive calls. 47 U.S.C. § 227.

The linchpin of the TCPA is its "prior express consent" requirement. Congress intended to eliminate unwanted calls by permitting robocalls to protected lines (cell phones and residential lines, 47 U.S.C. §§ 227(b)(1)(A), (B)), *only* with "prior express consent" of the called party, except in emergencies. In Congress's view, the prior express consent requirement balanced "(i)ndividuals' privacy rights, public safety interests, and commercial freedoms of speech and trade . . . in a way that protects the privacy of individuals and permits legitimate telemarketing practices." Pub. L. 102–243, § 2(9), 105 Stat. 2394 (1991).

To accomplish its goal of ending unwanted robocalls, Congress gave the FCC a broad mandate to carry out the TCPA's purpose—and *required* that it do so: "The Commission *shall* prescribe regulations to implement the requirements of this subsection." 47 U.S.C. § 227(b)(2) (emphasis added). The breadth of this delegation is demonstrated by the fact that the statutory subsections delineating the parameters of the FCC's authority are nearly all limitations: Subsections 227(b)(2)(D), (E) and (F) require the FCC to adopt rules relating to faxes and limit the agency's discretion in doing so; § 277(b)(2)(G) delineates a specific process the FCC must follow in

---

[6] https://docs.fcc.gov/public/attachments/fcc-18-177a1.pdf.

analyzing established business relationships; and § 227(b)(2)(B), (C), and (I) limit the agency's discretion in permitting exceptions to the statutory requirements. If the TCPA's general grant of authority were not broad, these limitations would be unnecessary.

Included within the FCC's broad authority is—as the panel acknowledged—authority to reasonably define undefined statutory terms. *See* Op. 14-15. As explained, in setting a definition, an agency can do more than repeat the words in the statute, so long as the definition is reasonable and consistent with the text, structure, and purpose of the statute. *See Mayfield*, 117 F.4th at 618-19. That Congress intended the FCC's regulations to do more than parrot the statute is evident in § 227(b)(3), which allows statutory and actual damages for a violation of either the statute *or* the FCC's regulations. If the FCC lacked authority to impose requirements not identical to those in the statute, allowing damages for regulatory violations would be surplusage.

It is evident that promulgating the One-to-One Consent Rule is within the FCC's broad authority under the TCPA, tied closely to the statute's congressional purpose and text, and the result of a thorough rulemaking process. In 2012, twenty years after the TCPA's passage, because telemarketing robocalls were still plaguing subscribers, the FCC issued a regulation requiring that prior express consent for telemarketing robocalls must be authorized "in writing." 47 C.F.R. § 64.1200(f)(9).

In 2023, recognizing that the flood of unwanted telemarketing robocalls had not abated, the FCC initiated a proceeding to evaluate the causes for the ongoing problem. *See* Order. In that proceeding, the FCC received extensive testimony, including from telemarketers and their trade associations. *See* Order ¶ 32.

Based on the information it collected and reviewed, including its own enforcement history, the FCC made factual findings demonstrating how previous interpretations of "prior express consent"—which permitted "consent" to be granted to thousands of callers with a single mouse click and permitted lead generators and telemarketers to sell that "consent" to other callers—failed to accurately reflect subscribers' desire to be called. Specifically, the FCC found:

1. "Lead-generated communications are a large percentage of unwanted calls and texts and often rely on flimsy claims of consent to bombard consumers with unwanted robocalls[.]" *Id.* ¶ 30.

2. "[B]uried, barely visible disclosures . . . appear in fine print on a website or only accessible through a hyperlink, burdening the consumer with yet another step to be fully informed." *Id.* ¶ 32.

3. "[T]he "resale of consumer data by lead generators and lead aggregators significantly contributes to the problem of illegal calls." *Id.* ¶ 31.

4. "[T]he record is clear that new protections are necessary to stop abuse of our established consent requirements." *Id.* ¶ 30.

5. "This [one-to-one consent] requirement ensures that consumers consent only to sellers they wish to hear from and will stop the abuses we saw, for example, in *Urth Access*, where the websites at issue included TCPA consent disclosures whereby the consumer 'consented' to receive robocalls from 'marketing partners.' Those 'marketing partners' were only visible to the consumer if the consumer clicked on a specific hyperlink to a second website that contained the names of 5,329 entities." *Id.* ¶ 32.

6. "Unequivocally requiring one-to-one consent will end the current practice of consumers receiving robocalls and robotexts from tens, or hundreds, of sellers—numbers that most reasonable consumers would not expect to receive." *Id.* ¶ 31.

7. "[S]mall businesses themselves will benefit from the protections we adopt. . . . [T]hese requirements extend to and protect business phones from having their own phones inundated with unwanted calls and texts. . . . [T]his is especially helpful for small business owners who feel they must answer all of their calls because each call may be from a potential customer." *Id.* ¶ 44.

In short, the factual record showed that the "consent" that lead generators were purporting to obtain from consumers was not true consent, nor was it express. No rational consumer would give actual consent to receive telemarketing robocalls from 5,239 entities in one go, and then permit that "consent" to be sold to an unlimited

number of other callers. In other words, the Rule was necessary to meaningfully implement the TCPA's requirement of "prior express consent." The record supports the conclusion that a rule limiting each consent to "no more than one identified seller" will return meaning to "prior express consent." *See* 47 C.F.R. § 64.1200(f)(9).

In determining the necessity for the Rule, the FCC thoroughly considered alternatives and explained each rejection. *See, e.g.*, Order ¶¶ 33, 34 & nn. 80, 81, 83, 84, 85, 86, 87. *See Lissack*, 125 F.4th at 260.

The FCC found that the existing regulation was not effectively limiting the unwanted robocalls Congress had directed the FCC to control because it did not ensure that subscribers truly consented to receive telemarketing robocalls. Accordingly, the FCC altered its definition of the statutory term. Had it not done so, the FCC would have failed to follow its mandate from Congress to "implement the requirements" of the TCPA. In promulgating the Rule, the FCC was well within its authority, and its thorough fact-finding and analysis warrant *Skidmore* deference.

## IV. The Eleventh Circuit Cases Relied on by the Panel Do Not Support Its Holding.

The panel characterizes several Eleventh Circuit cases as supporting its conclusion that the Rule refining the definition of "prior express consent" is inconsistent with its ordinary, common-law meaning, suggesting that the term had already been irrevocably defined by caselaw to the exclusion of the definition in the Rule. Op. 16-17. Not so. None of the decisions relied on by the panel assessed the

scope of the FCC's authority to define "prior express consent" and implement the statute. And none considered whether callers' "flimsy claims of consent" based on a consent form linking to multiple (sometimes thousands) of callers and the sale of resale of consent, constitute "express consent" under the statute. Order ¶ 30. As such, none control the outcome here.

Specifically, *Gorss Motels, Inc. v. Safemark Systems, LP*, 931 F.3d 1094, 1100 (11th Cir. 2019), relied on heavily by the panel, does not address the meaning of "prior express consent" at all, but interprets a different statutory term, "prior express invitation or permission." *See* Op. 17-18. And while *Lucoff v. Navient Solutions, LLC*, 981 F.3d 1299, 1304 (11th Cir. 2020), does address the meaning of "prior express consent," it deals with fact-specific questions that the One-to-One Consent Rule does not raise. The consent form at issue in *Lucoff* did list more than one potential caller, but the propriety of doing so was not at issue. *See* Op. 18.

*Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014), is similarly unhelpful. It states that when Congress uses terms, like "consent," that have a settled meaning under common law, the court must infer that Congress meant to incorporate the established meaning of those terms. *Id.* But *Osorio* did not involve evaluation of an agency interpretation or validity of an agency rule, so its general maxim does not direct the result here. Moreover, *Osorio* only addressed whether a

person could give consent for calls to another person's cell phone, not whether consent could be provided to multiple parties at once. *Id.* at 1250-54. *See* Op. 16.

Finally, *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1117-19, 1121-26 (11th Cir. 2014), does not address the meaning of the statutory term "prior express consent," but applied the FCC's well-reasoned interpretation of that term, grounded in the TCPA's purpose, to the case before it—only reinforcing the validity of the Rule at issue here. *See* Op. 18.

In short, the panel's departure from the *Loper* standards cannot be justified on the basis of Circuit precedent, emphasizing the need for rehearing.

## CONCLUSION

For these reasons, rehearing en banc is warranted.

March 10, 2025                    Respectfully Submitted,

                                  */s/ Leah M. Nicholls*
                                  Leah M. Nicholls
                                  PUBLIC JUSTICE
                                  1620 L Street NW, Suite 630
                                  Washington, DC 20036
                                  (202) 797-8600
                                  LNicholls@publicjustice.net
                                  *Counsel for Proposed Intervenors*

                                  Jennifer S. Wagner
                                  NATIONAL CONSUMER LAW CENTER
                                  7 Winthrop Square, 4th Floor
                                  Boston, MA 02110
                                  (617) 542-8010
                                  jwagner@nclc.org
                                  *Counsel for National Consumers League*

## CERTIFICATE OF COMPLIANCE

The foregoing petition complies with the length limit of Fed. R. App. P. 40(d)(3) because, excluding the parts exempted by 11th Cir. R. 40-4, it contains 3,897 words. This motion complies with the requirements of Fed. R. App. P. 32 because it has been prepared in proportionally spaced typeface, using Microsoft Word, in Times New Roman 14-point font.

March 10, 2025

*/s/ Leah M. Nicholls*
Leah M. Nicholls

*Counsel for Proposed Intervenors*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2025, the foregoing petition was filed electronically with the Clerk of Court through the appellate CM/ECF system. I further certify that all parties required to be served have been served.

March 10, 2025

*/s/ Leah M. Nicholls*
Leah M. Nicholls

*Counsel for Proposed Intervenors*