No. 24-10277

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

INSURANCE MARKETING COALITION LIMITED,
PETITIONER,

V.

FEDERAL COMMUNICATIONS COMMISSION
AND UNITED STATES OF AMERICA,
RESPONDENTS.

ON PETITION FOR REVIEW OF AN ORDER OF
THE FEDERAL COMMUNICATIONS COMMISSION

**BRIEF OF THE DISTRICT OF COLUMBIA, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, HAWAII, ILLINOIS, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW YORK, NORTH CAROLINA, OHIO, OREGON, RHODE ISLAND, SOUTH CAROLINA, SOUTH DAKOTA, UTAH, VERMONT, VIRGINIA, WASHINGTON, WEST VIRGINIA, AND WISCONSIN AS AMICI CURIAE IN SUPPORT OF PROPOSED INTERVENOR THE NATIONAL CONSUMER LAW CENTER'S PROPOSED PETITION FOR REHEARING EN BANC**

BRIAN L. SCHWALB
Attorney General
District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

CHLOE Q. PAN
Assistant Attorney General

400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6609
ashwin.phatak@dc.gov

*Insurance Marketing Coalition Ltd. v. FCC*, Case No. 24-10277

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2, and 26.1-3, the undersigned counsel certifies that the following listed persons and parties, in addition to those listed in Appellant's opening brief and Appellee's response brief, may have an interest in the outcome of this case:

1. Bonta, Rob – *Counsel for Amicus Curiae*;

2. Brown, Anthony G. – *Counsel for Amicus Curiae*;

3. Brown, Derek – *Counsel for Amicus Curiae*;

4. Brown, Nicholas W. – *Counsel for Amicus Curiae*;

5. Campbell, Andrea Joy – *Counsel for Amicus Curiae*;

6. Clark, Charity R. – *Counsel for Amicus Curiae*;

7. Commonwealth of Massachusetts – *Amicus Curiae*;

8. Commonwealth of Virginia – *Amicus Curiae*;

9. District of Columbia – *Amicus Curiae*;

10. Ellison, Keith – *Counsel for Amicus Curiae*;

11. Ford, Aaron D. – *Counsel for Amicus Curiae*;

12. Frey, Aaron M. – *Counsel for Amicus Curiae*;

13. Jackley, Marty – *Counsel for Amicus Curiae*;

14. Jackson, Jeff – *Counsel for Amicus Curiae*;

15. James, Letitia – *Counsel for Amicus Curiae*;

*Insurance Marketing Coalition Ltd. v. FCC*, Case No. 24-10277

16. Jennings, Kathleen – *Counsel for Amicus Curiae*;

17. Kaul, Joshua L. – *Counsel for Amicus Curiae*;

18. Lopez, Annie E. – *Counsel for Amicus Curiae*;

19. Mayes, Kristin K. – *Counsel for Amicus Curiae*;

20. McCuskey, John B. – *Counsel for Amicus Curiae*;

21. Miyares, Jason – *Counsel for Amicus Curiae*;

22. Neronha, Peter F. – *Counsel for Amicus Curiae*;

23. Nessel, Dana – *Counsel for Amicus Curiae*;

24. Pan, Chloe Q. – *Counsel for Amicus Curiae*;

25. Phatak, Ashwin P. – *Counsel for Amicus Curiae*;

26. Platkin, Matthew J. – *Counsel for Amicus Curiae*;

27. Raoul, Kwame – *Counsel for Amicus Curiae*;

28. Rayfield, Dan – *Counsel for Amicus Curiae*;

29. Schwalb, Brian L. – *Counsel for Amicus Curiae*;

30. State of Arizona – *Amicus Curiae*;

31. State of California – *Amicus Curiae*;

32. State of Colorado – *Amicus Curiae*;

33. State of Connecticut – *Amicus Curiae*;

34. State of Delaware – *Amicus Curiae*;

35. State of Hawaii – *Amicus Curiae*;

*Insurance Marketing Coalition Ltd. v. FCC*, Case No. 24-10277

36. State of Illinois – *Amicus Curiae*;

37. State of Maine – *Amicus Curiae*;

38. State of Maryland – *Amicus Curiae*;

39. State of Michigan – *Amicus Curiae*;

40. State of Minnesota – *Amicus Curiae*;

41. State of Nevada – *Amicus Curiae*;

42. State of New Jersey – *Amicus Curiae*;

43. State of New York – *Amicus Curiae*;

44. State of North Carolina – *Amicus Curiae*;

45. State of Ohio – *Amicus Curiae*;

46. State of Oregon – *Amicus Curiae*;

47. State of Rhode Island – *Amicus Curiae*;

48. State of South Carolina – *Amicus Curiae*;

49. State of South Dakota – *Amicus Curiae*;

50. State of Utah – *Amicus Curiae*;

51. State of Vermont – *Amicus Curiae*;

52. State of Washington – *Amicus Curiae*;

53. State of West Virginia – *Amicus Curiae*;

54. State of Wisconsin – *Amicus Curiae*;

55. Tong, William – *Counsel for Amicus Curiae*;

*Insurance Marketing Coalition Ltd. v. FCC*, Case No. 24-10277

56. Van Zile, Caroline S. – *Counsel for Amicus Curiae*;

57. Weiser, Philip J. – *Counsel for Amicus Curiae*;

58. Wilson, Alan – *Counsel for Amicus Curiae*;

59. Yost, Dave – *Counsel for Amicus Curiae*.

# TABLE OF CONTENTS

INTEREST OF *AMICI CURIAE* ............................................................................1

STATEMENT OF THE ISSUES.......................................................................3

ARGUMENT .......................................................................................................3

    I.    Despite Robust State Efforts To Combat Them, The Problem Of Illegal Robocalls Remains....................................................................3

        A.    Contrary to Congress's intent, lead generators have created a billion-dollar industry harvesting and selling consumer contact information to robocallers, causing substantial harms.........................................................................3

        B.    States have invested substantial resources into anti-robocall enforcement, but challenges remain. ...........................6

    II.    The FCC's One-To-One Consent Rule Complements State Efforts To Limit Robocalls By Preventing Lead Generators From Harvesting and Reselling Consumer Contact Information. ................10

CONCLUSION ....................................................................................................12

# TABLE OF AUTHORITIES

## Cases

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
  591 U.S. 610 (2020)......................................................... 3, 6, 9, 11

*Cordoba v. DIRECTTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019) ........................................ 4

*Mims v. Arrow Fin. Servs., LLC*,
  565 U.S. 368 (2012)........................................................ 10

*Osorio v. State Farm Bank, F.S.B.*,
  746 F.3d 1242 (11th Cir. 2014) ....................................... 11

## Statutes

47 U.S.C. § 227 .................................................................... 4

Ala. Code § 8-19A-3 ............................................................ 7

Alaska Stat. § 45.50.475 ...................................................... 7

Ariz. Rev. Stat. Ann. § 13-2919 .......................................... 7

Ariz. Rev. Stat. Ann. § 44-1278 .......................................... 7

Ark. Code Ann. § 5-63-204 .................................................. 7

Cal. Civ. Code § 1770 .......................................................... 7

Cal. Pub. Util. Code § 2871 ................................................. 7

Colo. Rev. Stat. § 18-9-311 .................................................. 7

Colo. Rev. Stat. § 6-1-302 .................................................... 7

Conn. Gen. Stat. § 16-256e .................................................. 7

Conn. Gen. Stat. § 52-570c .................................................. 7

iii

Fla. Stat. § 501.059 ...................................................................... 7

Ga. Code Ann. § 46-5-23 ............................................................ 7

815 Ill. Comp. Stat. Ann. § 305/1 ............................................... 7

Ind. Code § 24-5-14-5 ................................................................ 7

Kan. Stat. Ann. § 50-670 ........................................................... 7

La. Rev. Stat. Ann. § 45:810 ...................................................... 7

Mass. Gen. Laws ch. 159C § 3 .................................................. 7

Mass. Gen. Laws ch. 159 § 19B ................................................ 7

Me. Rev. Stat. tit. 10, § 1498 ..................................................... 7

Mich. Comp. Laws § 484.125 .................................................... 7

Minn. Stat. § 325E.26 ................................................................ 7

Minn. Stat. § 332.37 ................................................................... 7

Miss. Code Ann. § 77-3-451 ...................................................... 7

Mont. Code Ann. § 45-8-216 ..................................................... 7

N.C. Gen. Stat. § 75-104 ........................................................... 7

N.D. Cent. Code § 51-28-04 ...................................................... 7

N.H. Rev. Stat. Ann. § 359-E:1 ................................................. 7

N.J. Stat. Ann. § 48:17-28 ......................................................... 7

N.M. Stat. Ann. § 57-12-22 ....................................................... 7

N.Y. Gen. Bus. Law § 399-p ...................................................... 7

Neb. Rev. Stat. § 86-236 ............................................................ 7

Nev. Rev. Stat. §§ 597.812-597.818 ............................................................... 7

Ohio Rev. Code Ann. § 109.87 ..................................................................... 7

Okla. Stat. tit. 15, § 755.1 .......................................................................... 7

Okla. Stat. tit. 21, § 1847a ......................................................................... 7

Or. Rev. Stat. § 646A.370 ........................................................................... 7

73 Pa. Cons. Stat. § 2245.2 ........................................................................ 7

R.I. Gen. Laws § 5-61-3.4 ........................................................................... 7

R.I. Gen. Laws § 11-35-26 .......................................................................... 7

S.D. Codified Laws § 37-30-23 .................................................................. 7

Tenn. Code Ann. § 47-18-1502 ................................................................... 7

Tex. Bus. & Com. Code § 305.001 .............................................................. 7

Utah Code Ann. § 13-25a-103 .................................................................... 7

Va. Code Ann. § 59.1-518.2 ........................................................................ 7

Wash. Rev. Code § 80.36.400 ..................................................................... 7

Wis. Stat. § 100.52 ...................................................................................... 7

*Regulations*

47 C.F.R. § 64.1200 ............................................................................. 4, 10

Telemarketing Sales Rule,
    68 Fed. Reg. 4580 (Jan. 29, 2003) ........................................................ 7

*Other*

Bureau of Consumer Prot., Fed. Trade Comm'n, *"Follow the Lead" Workshop* (Sept. 2016), https://tinyurl.com/4xwunn6t ................................. 5, 6

Complaint, *Arizona v. Lansky*, No. 4:23-cv-00233-CKJ (D. Ariz. May 23, 2023) ...................................................................... 8

Fed. Commc'ns Comm'n, *Robocall Response Team: Combating Scam Robocalls & Robotexts* (Oct. 28, 2024), https://tinyurl.com/3nx2wdte ............. 1

Fed. Trade Comm'n, *Consumer Sentinel Network Data Book 2023* (Feb. 2024), https://tinyurl.com/3v28hwx6 ...................................... 9

Fed. Trade Comm'n, *Operation Stop Scam Calls: Federal and State Actions* (July 18, 2023), https://tinyurl.com/mr355mjx ................................. 9

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (2015)........................................... 6

Letter from Nat'l Ass'n of Att'ys Gen. to Sen. Roger Wicker, Chair, Sen. Comm. on Com., Sci., & Transp. & Sen. Maria Cantwell, Ranking Member, Sen. Comm. on Comm., Sci., & Transp. (Mar. 5, 2019), https://tinyurl.com/3wnj34eb................................................. 8

Letter from Tracy Nayer, Special Deputy Att'y Gen., N.C. Dep't of Just., to Amber Valdez Schober, President, Life Corporation (Feb. 6, 2024), https://tinyurl.com/26x2x2f8 .............................................. 9

Nat'l Ass'n of Att'ys Gen., Anti-Robocall Principles, https://tinyurl.com/3dx9kmw6......................................... 8

Nat'l Ass'n of Att'ys Gen., Reply Comment of Fifty-One State Attorneys General (Nov. 15, 2021), https://tinyurl.com/ydnnjpvj ...................... 2

Press Release, Fed. Trade Comm'n, *FTC Warns Hurricane Victims About Flood Insurance Robocall Scam* (Aug. 31, 2017), https://tinyurl.com/2uw8utw8........................................ 1, 2

Press Release, Off. of the Ark. Att'y Gen., *Consumer Alert: Beware Fraudulent Callers Claiming to Be Law Enforcement Officers* (July 18, 2024), https://tinyurl.com/6bya8ebn .................................................. 10

Press Release, Off. of the Ga. Att'y Gen., *Consumer Alert: Carr Warns of Scams and Fraud with Recovery Efforts Underway Following Hurricane Helene* (Sept. 27, 2024), https://tinyurl.com/2s3svm7a ..................................... 1

Press Release, Off. of the Ohio Att'y Gen., *Attorney General Yost Announces the Formation of National Anti-Robocall Litigation Task Force* (Aug. 2, 2022), https://tinyurl.com/yr7atabm ...................................................... 8

Reply Comments of 28 State Attorneys General (June 6, 2023), https://tinyurl.com/zk8ka97z ........................................... 5, 6, 11

U.S. Dep't of Agric., *Scam Alerts* (updated July 8, 2024), https://tinyurl.com/26mjdmyx .......................................................... 10

## INTEREST OF *AMICI CURIAE*

The District of Columbia, Arizona, California, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, North Carolina, Ohio, Oregon, Rhode Island, South Carolina, South Dakota, Utah, Vermont, Virginia, Washington, West Virginia, and Wisconsin (collectively, "*Amici* States") file this brief as *amici curiae* in support of proposed intervenor the National Consumer Law Center's proposed petition for rehearing en banc.

Americans are subjected to four *billion* robocalls per month.  Fed. Commc'ns Comm'n, *Robocall Response Team: Combating Scam Robocalls & Robotexts* (Oct. 28, 2024), https://tinyurl.com/3nx2wdte.  Many of these unwanted solicitations stem from the lead generation industry, which relies on unscrupulous tactics to harvest and resell consumer contact information.  Telemarketers, voice service providers, and scammers then use that personal data to harass consumers.  These robocalls often target individuals at their most vulnerable—so much so that government agencies and state Attorneys General must routinely issue warnings against robocall scams after natural disasters and other life-altering emergencies.  *See, e.g.*, Press Release, Off. of the Ga. Att'y Gen., *Consumer Alert: Carr Warns of Scams and Fraud with Recovery Efforts Underway Following Hurricane Helene* (Sept. 27, 2024), https://tinyurl.com/2s3svm7a; Press Release, Fed. Trade Comm'n, *FTC Warns*

*Hurricane Victims About Flood Insurance Robocall Scam* (Aug. 31, 2017), https://tinyurl.com/2uw8utw8.

For decades, *Amici* States have sought to protect consumers from the onslaught of illegal robocalls. But despite robust and bipartisan enforcement efforts, including some initiatives joined by all 50 states and the District of Columbia, robocalls remain among the top source of consumer complaints at most state Attorney General offices. *See* Nat'l Ass'n of Att'ys Gen., Reply Comment of Fifty-One State Attorneys General at 2 (Nov. 15, 2021), https://tinyurl.com/ydnnjpvj.

The FCC's one-to-one consent rule at issue in this appeal is a critical nationwide enforcement tool—complementing state enforcement efforts—that aims to shut the spigot of illegal robocalls. The rule ensures that consumers receive clear and conspicuous disclosures when consenting to sharing their contact information with third parties and requires that a specific seller obtain express consent to contact a specific consumer. Put another way, a lead generator may not exploit a consumer's dubiously obtained "consent" to expose the consumer's contact information to thousands of third parties for profit.

The panel's decision invalidating this commonsense rule threatens *Amici* States' interest in protecting consumers, families, and businesses from the deluge of invasive robocalls. *Amici* States therefore urge this Court to grant en banc rehearing given the importance of the rule and its potential benefit to millions of Americans.

## STATEMENT OF THE ISSUES

Whether the FCC's one-to-one consent result exceeded the agency's statutory authority under the Telephone Consumer Protection Act ("TCPA").

## ARGUMENT

## I.    Despite Robust State Efforts To Combat Them, The Problem Of Illegal Robocalls Remains.

### A.    Contrary to Congress's intent, lead generators have created a billion-dollar industry harvesting and selling consumer contact information to robocallers, causing substantial harms.

"Americans passionately disagree about many things.  But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 613 (2020).  The robocall epidemic is hardly new.  In 1991, Congress passed, and President George H.W. Bush signed into law, the TCPA in response to the "torrent of vociferous consumer complaints about intrusive robocalls."  *Id.* at 614.  At the time, a Senate sponsor of the TCPA described robocalls as "the scourge of modern society.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall."  *Id.* (quoting 137 Cong. Rec. 30821 (1991)).

As the Supreme Court recognized in *Barr*, Congress enacted the TCPA because it "found that banning robocalls was 'the only effective means of protecting telephone consumers from this nuisance and privacy invasion.'"  *Id.* at 615 (quoting TCPA of 1991, Pub. L. No. 102-243, § 2(12), 105 Stat. 2394, 2395 (1991)).  Thus,

the TCPA makes it generally unlawful to make certain calls and texts using an automatic telephone dialing system or an artificial or prerecorded voice. *See* 47 U.S.C. §§ 227(b)(1)(A), (B). The law provides a limited exception to this prohibition when the party being called has given their "prior express consent" to be contacted. *Id.* Furthermore, the TCPA vests the FCC with authority to promulgate rules to implement this prohibition. *Id.* § 227(b)(2). Pursuant to this authority, the FCC has long provided that autodialed, prerecorded, or artificially voiced calls that introduce an advertisement or constitute telemarketing are illegal unless the called party has given "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

The TCPA also authorized the FCC to promulgate regulations that "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Congress instructed the FCC to consider various approaches, "including the use of electronic databases, telephone network technologies, special directory markings, industry-based or company-specific 'do not call' systems, and any other alternatives, individually or in combination." *Id.* § 227(c)(1)(A). Accordingly, years ago, the FCC promulgated regulations that prohibit telemarketers from contacting consumers with phone numbers listed on the national Do Not Call Registry. *See* 47 C.F.R. § 64.1200(c)(2); *Cordoba v. DIRECTTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019).

Despite these efforts, unwanted robocalls have shown little sign of abating, and this is primarily because of so-called "lead generators." Lead generators provide the critical threshold step of collecting consumer phone numbers for distribution to third-party robocallers. *See* Reply Comments of 28 State Attorneys General at 2 (June 6, 2023), https://tinyurl.com/zk8ka97z (hereinafter "Reply Comments"). Said differently, lead generators act as middlemen, capturing contact information and then providing those "leads" to third-party businesses that can start badgering consumers. *See* Bureau of Consumer Prot., Fed. Trade Comm'n, *"Follow the Lead" Workshop* at 2 (Sept. 2016), https://tinyurl.com/4xwunn6t.

Lead generators commonly rely on public-facing websites that purport to promote a specific product or service online but ultimately aggregate large quantities of consumers' personal information. *Id.* A consumer wishing to learn more about a product or to receive a quote is prompted to complete a needs-based assessment and is directed to "consent" to obtain the final result. *Id.* at 2-3; *see, e.g.*, Reply Comments at 3. But often unbeknownst to the consumer, that "consent" grants the right for not only the website owner and its "agents, representatives, and affiliates" to robocall the consumer, but also for any "partner companies"—which can number in the *thousands*—to acquire and use the consumers' contact information. *"Follow the Lead"* at 3-4. Meanwhile, consumers may not even know that their information

is being sold and re-sold many times over, let alone what specific online interaction prompted the torrent of unwanted solicitations. *See id.* at 5.

Although the FCC has previously sought to empower consumers by clarifying that "a called party may revoke consent at any time," *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7989-90 (2015), a consumer has no meaningful way of retracting their consent once that consent has been sold to downstream parties. Lead generators typically do not maintain a relationship with buyers beyond the sale of consumer data and therefore have no mechanism for reliably transmitting a consumer's revocation of consent. Reply Comments at 12. And a consumer's revocation of consent to one robocaller does nothing to prevent *other* robocallers from continuing to bombard them. *See id.* at 12-13. This effectively renders "revocation" meaningless once a lead generator sells the consumer's information to third parties.

In short, more than 30 years after Congress sought to "fight[] back" against robocalls by effectively banning them through the TCPA, robocalls have persisted due to lead generation tactics that flout the statute and its implementing regulations. *Barr*, 591 U.S. at 613.

**B.    States have invested substantial resources into anti-robocall enforcement, but challenges remain.**

States have long sought to protect their residents from the robocall epidemic. More than 40 states have enacted prohibitions or restrictions on the use of robocalls,

many of which are modeled after the TCPA.[1]  Moreover, in addition to the national Do Not Call Registry, many states have also enacted "Do Not Call" state laws that allow consumers to place their telephone numbers in a registry that bars unsolicited calls.  *See* Telemarketing Sales Rule, 68 Fed. Reg. 4580, 4630 n.592 (Jan. 29, 2003) (listing state examples).  These registries shield consumers from telemarketers, with only limited exceptions for permissible types of solicitations.

State Attorneys General have also prioritized consumer protection through strategic public-private partnerships and targeted legislation.  All state Attorneys General have developed shared anti-robocall principles, joined by 15 major telecommunications providers, to implement technology like free call blocking and

---

[1]    *See* 2 Ala. Code § 8-19A-3(3)(a); Alaska Stat. § 45.50.475(a)(4); Ariz. Rev. Stat. Ann. §§ 13-2919, 44-1278; Ark. Code Ann. § 5-63-204; Cal. Civ. Code § 1770(a)(22)(A); Cal. Pub. Util. Code § 2871; Colo. Rev. Stat. §§ 18-9-311, 6-1-302(2)(a); Conn. Gen. Stat. §§ 16-256e, 52-570c; Fla. Stat. § 501.059(8)(a); Ga. Code Ann. § 46-5-23; 815 Ill. Comp. Stat. Ann. § 305/1 *et seq.*; Ind. Code § 24-5-14-5; Kan. Stat. Ann. § 50-670; Ky. Stat. Ann. § 367.461; La. Rev. Stat. Ann. § 45:810; Me. Rev. Stat. tit. 10, § 1498; Md. Code Ann., Pub. Util. § 8-204; Mass. Gen. Laws ch. 159C § 3, ch. 159 § 19B; Mich. Comp. Laws § 484.125; Minn. Stat. §§ 325E.26, 332.37(a)(13); Miss. Code Ann. § 77-3-451 *et seq.*; Mont. Code Ann. § 45-8-216(1)(a)-(d); Neb. Rev. Stat. § 86-236 *et seq.*; Nev. Rev. Stat. §§ 597.812-597.818; N.H. Rev. Stat. Ann. § 359-E:1 *et seq.*; N.J. Stat. Ann. § 48:17-28; N.M. Stat. Ann. § 57-12-22; N.Y. Gen. Bus. Law § 399-p; N.C. Gen. Stat. § 75-104; N.D. Cent. Code § 51-28-04; Ohio Rev. Code Ann. § 109.87; Okla. Stat. tit. 15, § 755.1; Okla. Stat. tit. 21, § 1847a; Or. Rev. Stat. § 646A.370 *et seq.*; 73 Pa. Cons. Stat. § 2245.2(j); R.I. Gen. Laws §§ 5-61-3.4, 11-35-26; S.D. Codified Laws § 37-30-23; Tenn. Code Ann. § 47-18-1502; Tex. Bus. & Com. Code § 305.001; Utah Code Ann. § 13-25a-103; Va. Code Ann. § 59.1-518.2; Wash. Rev. Code § 80.36.400; Wis. Stat. § 100.52(4).

facilitate cooperation in traceback investigations. *See* Nat'l Ass'n of Att'ys Gen., Anti-Robocall Principles, https://tinyurl.com/3dx9kmw6. In 2019, 54 state and territory Attorneys General supported the Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, signed into law by President Donald Trump, which required voice service providers to help block unwanted calls. *See* Letter from Nat'l Ass'n of Att'ys Gen. to Sen. Roger Wicker, Chair, Sen. Comm. on Com., Sci., & Transp. & Sen. Maria Cantwell, Ranking Member, Sen. Comm. on Comm., Sci., & Transp. (Mar. 5, 2019), https://tinyurl.com/3wnj34eb.

State Attorneys General have also taken aggressive legal action against robocall perpetrators. Since 2022, the Anti-Robocall Multistate Litigation Task Force, a 51-member collective of state Attorneys General that is led by Indiana, North Carolina, and Ohio, has issued over 100 civil investigative demands and subpoenas against telecommunications companies that traffic robocalls. *See* Press Release, Off. of the Ohio Att'y Gen., *Attorney General Yost Announces the Formation of National Anti-Robocall Litigation Task Force* (Aug. 2, 2022), https://tinyurl.com/yr7atabm. The Task Force has also initiated major lawsuits. For example, in 2023, 48 states and the District of Columbia sued Avid Telecom for facilitating 7.5 billion illegal robocalls to millions of people on the national Do Not Call Registry. *See* Complaint at 48, *Arizona v. Lansky*, No. 4:23-cv-00233-CKJ (D. Ariz. May 23, 2023) (alleging that consumers' "grant of consent [was] to thousands

of potential calling entities, which could and should have alerted Defendants their customer lacked proper consent to make [] robocalls").

That same year, state Attorneys General from all 50 states and the District of Columbia collaborated with law enforcement partners to launch a national crackdown dubbed "Operation Stop Scam Calls."  Fed. Trade Comm'n, *Operation Stop Scam Calls: Federal and State Actions* (July 18, 2023), https://tinyurl.com/mr355mjx.  The sweeping campaign sought to target, among others, lead generators who falsely represented that consumers had "consented" to receiving calls.  *See id.*

But despite these extensive efforts, unwanted robocalls continue to harm the public.  Just as the federal government "receives a staggering number of complaints about robocalls," so too do states "likewise field a constant barrage of complaints." *Barr*, 591 U.S. at 613.  And these robocalls are not mere nuisances.  In 2023 alone, consumers reported losing more than $1.2 billion to scams perpetrated through robocalls and text messages.  *See* Fed. Trade Comm'n, *Consumer Sentinel Network Data Book 2023* at 12 (Feb. 2024), https://tinyurl.com/3v28hwx6.  Beyond inflicting widespread financial harm, robocalls are also leveraged for illicit schemes such as intimidating voters, *see, e.g.*, Letter from Tracy Nayer, Special Deputy Att'y Gen., N.C. Dep't of Just., to Amber Valdez Schober, President, Life Corporation (Feb. 6, 2024), https://tinyurl.com/26x2x2f8 (warning letter on behalf of 51 state Attorneys

General to a company allegedly using robocalls to dissuade voters from participating in the New Hampshire primary elections); defrauding public benefits, *see, e.g.*, U.S. Dep't of Agric., *Scam Alerts* (updated July 8, 2024), https://tinyurl.com/26mjdmyx; and impersonating law enforcement and public officials, *see, e.g.*, Press Release, Off. of the Ark. Att'y Gen., *Consumer Alert: Beware Fraudulent Callers Claiming to Be Law Enforcement Officers* (July 18, 2024), https://tinyurl.com/6bya8ebn.

## II. The FCC's One-To-One Consent Rule Complements State Efforts To Limit Robocalls By Preventing Lead Generators From Harvesting and Reselling Consumer Contact Information.

The FCC's one-to-one consent rule provides a critical federal complement to state-level efforts to combat robocalls by creating a nationwide limitation on certain harvesting of consumer contact information. Notably, Congress enacted the TCPA after recognizing that "federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012). At the time, "over half the [s]tates had enacted statutes restricting telemarketing," but these were insufficient because states lacked "jurisdiction over interstate calls." *Id.* at 372-73 (internal quotation marks omitted).

The FCC's rule clarifies that "prior express written consent" to a robocall under the TCPA is limited to between one specific consumer and one specific seller. 47 C.F.R. § 64.1200(a)(2). Importantly, the rule ensures that consumers receive

clear and conspicuous disclosures when consenting to sharing their contact information.  *See* Reply Comments at 17.  In practice, then, the rule prevents lead generators from exploiting a single point of contact with a consumer to subject that consumer to an unending stream of robocalls.  The rule also protects consumers' ability to meaningfully revoke consent—and thereby stop receiving robocalls— when calls are no longer welcome.  The rule thus ensures that the common law understanding that "consent may be withdrawn" is given effect as Congress intended.  *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1253 (11th Cir. 2014). In short, the one-to-one consent rule provides what the TCPA's plain language has always intended: "to prohibit[] almost all robocalls to cell phones."  *Barr*, 591 U.S. at 615.

The rule therefore builds on state enforcement efforts by targeting robocalls at one of their sources: the point where consumer contact information is first reaped. State enforcement often hinges on identifying bad actors after consumers have *already* suffered harm—whether through fraud, harassment, or privacy violations. State action, while critical, depends on cooperation with consumers, regulators, and telecommunications providers to track down perpetrators.  By contrast, the one-to-one consent rule empowers consumers to make informed decisions when sharing their contact information, preventing harm before it even occurs.  This reduces the

11

scale of robocalls and allows state enforcement to focus on downstream actors that continue to flout state and federal law.

## CONCLUSION

The Court should grant the petition for rehearing en banc.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General
District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

/s/ Ashwin P. Phatak
ASHWIN P. PHATAK
Principal Deputy Solicitor General

CHLOE Q. PAN
Assistant Attorney General

Office of the Attorney General for
  the District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6609
ashwin.phatak@dc.gov

March 2025

On behalf of:

KRISTIN K. MAYES
*Attorney General*
*State of Arizona*
2005 N. Central Avenue
Phoenix, AZ 85004

ROB BONTA
*Attorney General*
*State of California*
1515 Clay Street
Oakland, CA 94612

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway, 10th Floor
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

ANNE E. LOPEZ
*Attorney General*
*State of Hawaii*
425 Queen Street
Honolulu, HI 96813

KWAME RAOUL
*Attorney General*
*State of Illinois*
115 South LaSalle Street
Chicago, IL 60603

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 04333

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

13

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 12224

JEFF JACKSON
*Attorney General*
*State of North Carolina*
P.O. Box 629
Raleigh, NC 27602

DAVE YOST
*Attorney General*
*State of Ohio*
30 East Broad Street, 17th Floor
Columbus, OH 43215

DAN RAYFIELD
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

ALAN WILSON
*Attorney General*
*State of South Carolina*
P.O. Box 11549
Columbia, SC 29211

MARTY JACKLEY
*Attorney General*
*State of South Dakota*
1302 East Highway 14, Suite I
Pierre, SD 57501

DEREK BROWN
*Attorney General*
*State of Utah*
Utah Capitol Building
350 N State Street, Suite 230
Salt Lake City, UT 84114

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

JASON MIYARES
*Attorney General*
*Commonwealth of Virginia*
202 North 9th Street
Richmond, VA 23219

NICHOLAS W. BROWN
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

JOHN B. MCCUSKEY
*Attorney General*
*State of West Virginia*
1900 Kanawha Blvd. E.
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305

JOSHUA L. KAUL
*Attorney General*
*State of Wisconsin*
17 W. Main Street
Madison, WI 53703

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 29(a)(5).  This brief contains 2,600 words, including all headings, footnotes, and quotations, and excluding the parts of the response exempted under Fed. R. App. P. 32(f).  I certify that this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

/s/ Ashwin P. Phatak
ASHWIN P. PHATAK

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on March 17, 2025, an electronic copy of the foregoing

brief was filed with the Clerk of Court using the ECF system and thereby served

upon all counsel appearing in this case.

/s/ Ashwin P. Phatak
ASHWIN P. PHATAK